IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| IN RE MENTOR CORP. OBTAPE | * MDL Docket No. 2004 |
| | 4:08-MD-2004 (CDL) |
| TRANSOBTURATOR SLING PRODUCTS | * |
| | Case No. |
| LIABILITY LITIGATION | * 4:13-cv-239 (Pierce) |

O R D E R

Defendant Mentor Worldwide LLC developed a suburethral sling product called ObTape Transobturator Tape, which was used to treat women with stress urinary incontinence. Plaintiff Tracie Pierce was implanted with ObTape and asserts that she suffered injuries caused by ObTape. Mrs. Pierce brought a product liability action against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused her injuries. Mrs. Pierce also asserts that Mentor did not adequately warn her physicians about the risks associated with ObTape. Her husband Ronald asserts a loss of consortium claim. Mentor seeks summary judgment on all of Plaintiffs' claims, contending that they are time-barred under Mississippi law. For the reasons set forth below, the Court agrees, and Mentor's summary judgment motion (ECF No. 39 in 4:13-cv-239) is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

## FACTUAL BACKGROUND

Mrs. Pierce was diagnosed with stress urinary incontinence. Her doctor, Dr. Charles Secrest, recommended that Mrs. Pierce undergo a sling implantation procedure.  On December 17, 2003, Dr. Secrest implanted Mrs. Pierce with ObTape.  In early 2004, Mrs. Pierce developed fatigue, flu-like symptoms, and fever; a physical exam revealed vaginal and rectal bleeding.  Mrs. Pierce visited Dr. Secrest on March 19, 2004 complaining of fever, malaise, and vaginal discharge.  Dr. Secrest examined Mrs. Pierce and found that her ObTape had eroded; he also observed pus and drainage.  Secrest Dep. 78:14-79:1, ECF No. 39-5 in 4:13-cv-239.  Dr. Secrest told Mrs. Pierce that her ObTape had eroded and that she "had to go straight to the hospital" because Dr. Secrest "said he had to remove the sling."  Pierce Dep.

2

62:7-63:2, ECF No. 39-4 in 4:13-cv-239.  Dr. Secrest removed Mrs. Pierce's ObTape that day.  Mrs. Pierce's discharge and fever symptoms resolved.  *Id.* at 37:2-17.  On one occasion, Mrs. Pierce asked Dr. Secrest if there had been "a problem with the sling, and he said no."  Pierce Dep. 52:19-22, ECF No. 40-3 in 4:13-cv-239.  On another occasion, she asked Dr. Secrest "if there had been any reports of any problems, and he told [her] no."  *Id.* at 52:23-25.

Mrs. Pierce asserts that at some point after the excision surgery, she developed urinary tract infections and had fevers associated with those infections; Mrs. Pierce attributes these symptoms to ObTape.  Mrs. Pierce pointed to evidence that she was implanted with a native tissue graft in October 2004.  And in 2007, she was implanted with a medical device called InterStim to treat her pelvic symptoms.  Mrs. Pierce did not have a foreign body reaction to either the graft or InterStim, and she pointed to evidence that Dr. Secrest decided not to implant Mrs. Pierce with another mesh product "[b]ecause of the way [her] body reacted to the mesh."  *Id.* at 125:14-126:3.  Mrs. Pierce asserts that she did not suspect that her problems might be related to ObTape until she saw a television commercial regarding mesh implant complications in 2013.

Mrs. Pierce asserts claims for negligence, strict liability (design defect, manufacturing defect, and failure to warn),

3

breach of express warranty, and breach of implied warranty.  Mr. Pierce asserts a loss of consortium claim.

DISCUSSION

Plaintiffs filed their action in this Court on July 9, 2013 under the Court's direct filing order.  The parties agreed that for direct-filed cases, the "Court will apply the choice of law rules of the state where the plaintiff resides at the time of the filing of the complaint."  Order Regarding Direct Filing § II(E), ECF No. 446 in 4:08-md-2004.  Plaintiffs live in Mississippi, and all of Mrs. Pierce's ObTape-related treatment took place in Mississippi.  The parties agree that Mississippi law applies to Plaintiffs' claims.

## I. Negligence and Strict Liability Claims

Mississippi has a three-year statute of limitations for product liability and negligence claims.  Miss. Code Ann. § 15-1-49(1).  In cases that involve "involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury."  Miss. Code Ann. § 15-1-49(2).  The Mississippi Supreme Court has determined that "the plain language of Section 15-1-49 supports an interpretation 'that the cause of action accrued upon discovery of the injury, *not discovery of the injury and its cause*.'"  *Lincoln Elec. Co. v.*

*McLemore*, 54 So. 3d 833, 836 (Miss. 2010) (quoting *Angle v. Koppers, Inc.*, 42 So. 3d 1, 5 (Miss. 2010)).

In *McLemore*, the plaintiff's cause of action accrued when his doctor diagnosed him with Parkinsonism and told the plaintiff "that it might have been related to his welding work." *Id.* at 838. In *Angle*, the plaintiff's cause of action accrued when she was diagnosed with various illnesses, even if she did not know at the time that the illnesses might have been caused by the defendant's toxic chemicals. *Angle*, 42 So. 3d at 3, 7; *see also Phillips 66 Co. v. Lofton*, 94 So. 3d 1051, 1059 (Miss. 2012) (finding that the plaintiff "could not reasonably have known about his injury" until he was diagnosed with pulmonary fibrosis and possible asbestosis even though he started experiencing symptoms suggestive of these diagnoses years before); *Owens-Illinois, Inc. v. Edwards*, 573 So. 2d 704, 709 (Miss. 1990) (finding that the plaintiff's cause of action did not accrue until he was diagnosed with asbestosis).

Under this precedent, Mrs. Pierce's cause of action accrued in March 2004, when Dr. Secrest diagnosed her with an erosion of her ObTape and told her to go straight to the hospital so he could remove the sling. At that point, Mrs. Pierce knew or certainly should have known that she had an injury. And even though Mississippi does not require that a plaintiff know the cause of an injury for the statute of limitations to accrue,

5

Mrs. Pierce knew or should have known that her injury was related to ObTape.

Mrs. Pierce emphasizes that she did not know (1) what kind of sling she had been implanted with until years after the implant surgery, (2) what an erosion is, or (3) why she had to go straight to the hospital to have the sling removed. Mrs. Pierce thus appears to argue that she could not have been on notice of her injury until she knew the name of the product that was connected to her injuries and received a more thorough explanation of her diagnosis. Presumably, Dr. Secrest would have told Mrs. Pierce what type of sling had been implanted in her body if she had asked. And the Court presumes that if Mrs. Pierce had told Dr. Secrest that she did not understand the meaning of the word "erosion" or why it was important for her to have the sling removed immediately, he would have told her. The bottom line is that Mrs. Pierce had adverse symptoms related to her sling in March 2004 and she knew it. That is enough to trigger the statute of limitations under Mississippi law.

Mrs. Pierce also argues that the statute of limitations should be tolled under Miss. Code Ann. § 15-1-67. That statute provides: "If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such

6

fraud shall be, or with reasonable diligence might have been, first known or discovered."

"[A] plaintiff, who seeks to avail [herself] of the fraudulent concealment doctrine, must plead fraudulent concealment, and then prove that some affirmative act or conduct was done by the defendant which prevented discovery of a claim and that due diligence was performed on his part to discover it." *Carder v. BASF Corp.*, 919 So. 2d 258, 261 (Miss. Ct. App. 2005); *accord Trustmark Nat. Bank v. Meador*, 81 So. 3d 1112, 1119 (Miss. 2012) ("The party [asserting fraudulent concealment] is required to show that (1) some affirmative act of conduct was done and prevented discovery of the claim; and (2) due diligence was performed on its part to discover the claim."). "The requirement of proof of an affirmative act refers not to proof of the act that gives rise to the claim but rather to a *subsequent* affirmative act of concealment." *Bryant v. Wyeth*, Inc., 816 F. Supp. 2d 329, 335 (S.D. Miss. 2011) (finding no fraudulent concealment where a plaintiff claimed that a product label did not adequately disclose the product's risks and there was no evidence of subsequent affirmative acts of concealment).

Based on the Court's review of Mrs. Pierce's Complaint, Mrs. Pierce did not plead fraudulent concealment or otherwise suggest in her Complaint that she was alleging that Mentor undertook some affirmative act that prevented her from

7

discovering her claims. Even if she had made such allegations, Mrs. Pierce did not point to any evidence that Mentor undertook an affirmative act to hinder her investigation of her potential claims. Mrs. Pierce's fraudulent concealment argument is based on her assertion that Mentor continued to market ObTape without disclosing certain complication rates that Mentor had allegedly discovered. In other words, she contends that Mentor initially provided inadequate warnings regarding ObTape and then did not supplement its warnings. That is not a subsequent affirmative act of concealment that kept Mrs. Pierce from learning that she had been injured or that her injury was connected to ObTape.

Mrs. Pierce knew or should have known in 2004, when she experienced complications that required the removal of her ObTape, that she had suffered an injury and that the injury was related to ObTape. At that time, a person of common knowledge and experience in Mrs. Pierce's position would have been on notice that her injuries may be related to ObTape, and she would have been able to begin an investigation to determine whether those injuries were caused by a problem with ObTape, a problem with the implantation surgery, or another problem. But here, Mrs. Pierce did not point to evidence that she exercised reasonable diligence to investigate her injury after she learned of it. She asserts that she asked her implanting physician once if there was a problem with the sling and once if there had been

any problems reported with the sling. The Court is not convinced that asking these two questions of one doctor amounts to reasonable diligence, particularly given that the same doctor told Mrs. Pierce that he did not want to implant her with another mesh sling because of the way her body reacted to ObTape. In sum, Mrs. Pierce did not point to any evidence that Mentor took affirmative acts to prevent her from knowing of a potential connection between ObTape and her injuries, so Miss. Code Ann. § 15-1-67 does not apply to toll the statute of limitations.

For the reasons set forth above, the statute of limitations for Mrs. Pierce's product liability and negligence claims accrued in March 2004, when Mrs. Pierce knew or should have known that she suffered an injury related to ObTape. She did not file this action within three years, so her product liability and negligence claims are time-barred.

## II. Breach of Warranty Claims

Mississippi has a six-year statute of limitations for breach of warranty actions. Miss. Code Ann. § 75-2-725(1). "A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." Miss. Code Ann.

9

§ 75-2-725(2).  "The statute in unmistakable language states that in order for a warranty of this type to extend beyond six years after the date of tender of delivery, such warranty must explicitly relate to future performance of the goods."  *Rutland v. Swift Chem. Co.*, 351 So. 2d 324, 325 (Miss. 1977)  Plaintiffs did not point to any evidence that any warranty made by Mentor explicitly extended to future performance.

Mrs. Pierce notes that § 75-2-725(1) "does not alter the law on tolling of the statute of limitations."  Miss. Code Ann. § 75-2-725(4).  But as discussed above, Mrs. Pierce did not establish fraudulent concealment.  Mrs. Pierce's breach of warranty claims thus accrued on December 17, 2003, when Mrs. Pierce was implanted with ObTape.  She did not file this action until more than nine years later.  Her warranty claims are therefore time-barred.

CONCLUSION

As discussed above, all of Mrs. Pierce's claims are time-barred.  Mr. Pierce's loss of consortium claim fails because Mrs. Pierce's claims fail.  *See Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So. 2d 331, 341-42 (Miss. 2004) (noting that loss of consortium claims are derivative and that "the plaintiffs in these actions stand in the shoes of the injured . . . party, subject to all defenses that would have been available against the injured person").  Mentor's summary

judgment motion (ECF No. 39 in 4:13-cv-239) is therefore granted.

IT IS SO ORDERED, this 19th day of August, 2016.

                                            s/Clay D. Land
                                            CLAY D. LAND
                                            CHIEF U.S. DISTRICT COURT JUDGE
                                            MIDDLE DISTRICT OF GEORGIA